## Richmond

RUDOPLPH V. REASE

v.

COMMONWEALTH OF VIRGINIA

Record No. 830182.

April 27, 1984.

Present: Cochran, Poff, Compton, Stephenson, Russell and Thomas, JJ., and Gordon, Retired Justice.

*David J. Fudala (Hirschkop & Grad, P.C.*, on brief), for appellant.
*Linwood T. Wells, Jr., Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this criminal appeal, the question is whether the state court lost jurisdiction to revoke a suspended sentence because of a lapse of time caused by defendant's federal imprisonment for a crime committed while on state probation.

As pertinent here, Code § 19.2-306 provides:

"The court may, for any cause deemed by it sufficient which occurred at any time within the probation period, or if none, within the period of suspension fixed by the court . . . revoke the suspension of sentence and any probation, if the defendant be on probation, and cause the defendant to be arrested and brought before the court at any time within one year after the probation period . . . . In the event that any person placed on probation shall leave the jurisdiction of the court without the consent of the judge, or having obtained leave to remove to another locality violates any of the terms of his probation, he may be apprehended and returned to the court and dealt with as provided above."

Appellant Rudolph V. Rease pleaded guilty to a charge of robbery and was sentenced by the trial court in November of 1972 to:

"[S]erve ten (10) years in the Penitentiary House of this Commonwealth, at hard labor, but in mitigation of punishment, it appearing compatible with the public interest so to do, the Court does now suspend seven (7) years of the said sentence, conditioned upon the defendant's good behavior and that he shall be on active probation . . . for a period of five years upon his release from confinement."

Defendant was released from confinement on July 22, 1974.

During the term of probation, defendant was arrested by federal authorities on October 20, 1976, and charged with a bank robbery that occurred on that date. He was detained in federal custody in the Arlington County Jail pending trial and sentencing. Upon being notified of defendant's federal arraignment, the court below issued a warrant in November requiring defendant to show

cause why his suspended sentence and probation should not be revoked. This bench warrant was not served on defendant at that time.

In December, defendant was found guilty of the federal charge and sentenced in January of 1977 to serve 18 years in a federal penitentiary. On January 13, defendant's Virginia probation officer advised the state trial judge of the sentencing and that defendant was still incarcerated in the nearby Arlington jail. The Commonwealth at that time did not attempt to arrange a hearing on the probation violation.

On January 17, defendant was moved to a federal penitentiary. In March, a Virginia detainer based on the bench warrant was filed against defendant with the Federal Bureau of Prisons. The defendant remained in federal penal institutions in Pennsylvania, Georgia, Illinois, and Indiana until released on parole on October 19, 1982. During this period of incarceration, defendant made requests that the detainer be released or that Virginia afford him a hearing on the revocation of his probation. The trial court denied the release request and Virginia authorities notified him that he would not be returned to the Commonwealth for a revocation hearing until released from federal custody.

On the day of defendant's federal discharge, the bench warrant was served and defendant was brought to Virginia. A revocation hearing was held on November 5, 1982. Defendant asserted that the trial court lacked jurisdiction to revoke the probation because the time fixed by Code § 19.2-306 within which the court could act had expired. The trial court ruled that when defendant came under federal control there was a "tolling effect" on the time constraint of the Virginia statute. Thus, the court exercised jurisdiction, found that defendant had violated probation, and ordered execution of the suspended seven-year penitentiary sentence. Defendant appeals from that order.

On appeal, defendant focuses on the statute in question. He concedes that a crime was committed during the probation period. He agrees that during the probation period of July 22, 1974 to July 22, 1979, and within one year thereafter, the trial court had absolute discretion to revoke the probation and suspended sentence. He contends, however, that the court's power to revoke could not extend beyond July 22, 1980 and that when defendant was brought before the court on November 5, 1982, the court

acted without jurisdiction in ordering execution of the suspended sentence.

Defendant further argues that because federal law expressly provides for delivery of a federal prisoner to state custody by use of a writ of habeas corpus *ad prosequendum, see* 28 U.S.C. § 2241(c)(5) (1982); 28 C.F.R. §§ 527.30 -.31 (1983), the State of Virginia readily could have brought him back to Fairfax for a probation revocation hearing during his period of federal incarceration. He says he "did not abscond or try in any way to avoid the charge which had been placed against him; indeed, he wrote numerous letters requesting a disposition of the charge." Defendant also argues that the Commonwealth's "conduct in this case ignores the serious harm to [him] . . . brought about by such a lengthy delay in conducting the revocation proceedings." He says the fact that a detainer is outstanding for an inmate "directly affects the conditions of his confinement, including security classification, parole release date, and eligibility to participate in work release programs and other programs." More importantly, he urges that delaying revocation proceedings until the term of federal incarceration expires deprives defendant of any opportunity for concurrent sentencing under the Virginia statute which authorizes such procedure when a defendant is in a federal prison at the time of state sentencing. *See* Code § 19.2-308.1. He contends that such a delay thus can lengthen unjustly the term of incarceration.

Conceding the time constraints of § 19.2-306 are jurisdictional, the Attorney General contends the defendant's probation was revoked within the time prescribed by law. He argues that the statute, while limiting the time within which revocation of a suspended sentence or probation may take place, provides two "exceptions" to such limit. The Attorney General urges that these "exceptions" consist of cases in which a person, who has been placed on probation, leaves "the jurisdiction of the court without the consent of the judge," or obtains "leave to remove to another locality" and then "violates any of the terms of his probation." In those cases, the argument continues, the statute provides merely that such persons "may be apprehended and returned to the court and dealt with as provided above." The Attorney General says that the "clear intent" of the General Assembly, in referring specifically to those situations, was to take them outside the time limits otherwise prescribed for revocation hearings. He says, citing foreign authority, that it is not unusual for the legislature to place

an exception into a statute of limitations for persons who become residents of another state or otherwise remain outside the state. Here, the Attorney General argues, "it is clear" the defendant left the jurisdiction without obtaining the consent of the judge.

We do not agree with this interpretation, given the facts of this case. We are of opinion that the language "shall leave the jurisdiction of the court without the consent of the judge" manifestly applies primarily to a fugitive or to one who absconds. It does not apply to a person who, as here, departs the Commonwealth because he is in the custody of federal authorities.

Alternatively, the Attorney General argues that if we do not find the so-called statutory "exception" applies to the defendant, we should nevertheless determine that the trial court had jurisdiction to revoke the probation. He contends that a proper construction of the statute excludes from its provisions cases where a probationer commits a crime leading to his incarceration outside the Commonwealth and the state court promptly has issued a bench warrant followed by a detainer.*

We agree with the alternative position of the Attorney General. The probation statutes are highly remedial and should be construed liberally. *Richardson* v. *Commonwealth*, 131 Va. 802, 811, 109 S.E. 460, 462 (1921). The power of the court to revoke for breach of the terms and conditions of probation should not be restricted beyond the limitations fixed by the statutes. *Dyke* v. *Commonwealth*, 193 Va. 478, 484, 69 S.E.2d 483, 486-87 (1952); *accord Grant* v. *Commonwealth*, 223 Va. 680, 684, 292 S.E.2d 348, 350 (1982).

Moreover, the probation statutes "afford to trial courts a valuable means of bringing about the rehabilitation of offenders against the criminal laws." *Dyke* v. *Commonwealth*, 193 Va. at 484, 69 S.E.2d at 486. Rehabilitation is more readily accomplished when the probationer is under the broad control of the

---

*A detainer in this context is an administrative device to assure that a prisoner "subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a parole violation has had an opportunity to act—in this case by taking the inmate into custody or by making a parole revocation determination." *Moody* v. *Daggett*, 429 U.S. 78, 80, n.2 (1976). "When two autonomous jurisdictions are involved," as when a state detainer is placed against an inmate of a federal penitentiary, "a detainer is a matter of comity." *Id.*; *cf.* The Agreement on Detainers, Code §§ 53.1-210 to -215 (applicable when a person is serving a term of imprisonment and there is pending in any other party jurisdiction "any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner. . . ." § 53.1-210, art. III).

court and the direct supervision of the court's probation officer. And when defendant, due to his own conduct, is no longer under such control and supervision, the act of grace in granting probation in the first place is rendered a nullity.

Consequently, we hold that the legislature did not intend the statutory one-year limitation to restrict the power of the court to revoke probation under these circumstances. When, as here, the probationer commits another crime within the probation period and is arrested by another jurisdiction, thereby placing himself beyond the jurisdiction and control of the sentencing court, the one-year time constraint of § 19.2-306 is suspended. The time limit remains suspended, when the probation period expires during incarceration in the other jurisdiction, until the probationer is released by such other jurisdiction, provided the original court as soon as practicable has issued a warrant charging violation of probation and a detainer. Therefore, in this case the one-year statutory period was suspended because of defendant's federal arrest and commenced to run on October 19, 1982, the day defendant was released from federal custody. Thus, the trial court had jurisdiction, and the November 1982 revocation hearing was held in a timely manner.

■ Finally, we address defendant's policy argument. He claims that no tolling period should be allowed because delay in disposing of the probation violation causes denial of certain penal benefits and privileges. These contentions are answered fully by reference to *Moody v. Daggett*, 429 U.S. 78 (1976).

In *Moody*, the Supreme Court decided that a federal parolee imprisoned for a crime committed while on parole was not entitled constitutionally to a prompt revocation hearing when a parole violator warrant was issued and lodged with the institution of his confinement but not served on him. In that case, the defendant asserted protected liberty interests in both the length and conditions of his confinement. He contended those interests were disregarded in several particulars by issuance against him of an unexecuted parole violator warrant. He claimed such procedure barred him from serving his prior sentence concurrently with his present sentences, retarded his parole eligibility on the later convictions, and adversely affected his prison classification status. *Id.* at 85.

The Supreme Court held there was no requirement for an immediate revocation hearing, before the parolee had been taken into custody as a parole violator. *Id.* at 86. The Court said that the defendant's present confinement and consequent liberty loss

did not derive from the outstanding detainer, but from his recent convictions. "Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the . . . intent to defer consideration of parole revocation to a later time." *Id.*

The Court decided that the "other injuries" the defendant claimed to suffer either did not involve a loss of protected liberty or had not occurred by reason of the warrant and detainer. *Id.* at 87. Noting that the defendant's "real complaint" was that he desired to serve his revoked sentence concurrently with the sentences for the present crimes, the Court said that the federal authorities retained full discretion to dismiss the warrant or to decide, after hearing, that the parole need not be revoked. *Id.* The Court said that nothing in the applicable federal statute or regulations gave the defendant the "right" to force the decision on revocation. *Id.* at 88.

In conclusion, the Court observed that a decision, immediately upon incarceration for a subsequent offense, would deprive the correctional authorities of valuable information about the defendant's entitlement to continued release notwithstanding the parole violation. The Court noted that a decision to revoke often would be "foreordained" upon conviction of subsequent crimes. *Id.* at 89. The Court said that it is appropriate to hold a revocation hearing at a time when an accurate prediction on defendant's future conduct can be made, based on his record of behavior in prison. The most relevant time for such a hearing, therefore, would be at the expiration of the parolee's intervening sentence.

The applicability, by analogy, of the statements in *Moody* to defendant's contentions in the present case is obvious and need not be set out seriatim. When a state probation violation warrant merely has been issued but not served and a detainer has been lodged, a defendant has no constitutional or statutory right to force the trial court to decide the revocation issue. This is true even though, as here, the defendant was, for a brief time, held in federal custody in jail in an adjoining county. Accordingly, it was entirely proper for the trial court to follow the procedure employed in this case and to defer decision on the probation violation until completion of defendant's federal incarceration.

Because we find no error in the judgment of the trial court, the order appealed from will be

*Affirmed.*