Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Carrico, S.J.

VALERIE R. WHITE
                                        OPINION BY
v.  Record No. 080166         SENIOR JUSTICE HARRY L. CARRICO
                                      October 31, 2008
COMMONWEALTH OF VIRGINIA


             FROM THE COURT OF APPEALS OF VIRGINIA

     This appeal involves Virginia's first-offender statute,

Code § 18.2-251, and the issue is whether the Court of Appeals

erred when it affirmed the circuit court's judgment revoking the

first-offender status of the defendant, Valerie R. White, and

convicting her of the possession of cocaine, the underlying

offense with which she was charged.  Finding that the Court of

Appeals did err, we will reverse its judgment.

     Code § 18.2-251 provides in pertinent part as follows:

          Whenever any person who has not previously been
     convicted of any offense under this article or under any
     statute of the United States or of any state relating to
     narcotic drugs, marijuana, or stimulant, depressant, or
     hallucinogenic drugs, or has not previously had a
     proceeding against him for violation of such an offense
     dismissed as provided in this section, pleads guilty to or
     enters a plea of not guilty to possession of a controlled
     substance under § 18.2-250 or to possession of marijuana
     under § 18.2-250.1, the court, upon such plea if the facts
     found by the court would justify a finding of guilt,
     without entering a judgment of guilt and with the consent
     of the accused, may defer further proceedings and place him
     on probation upon terms and conditions.

                            . . . .

          Upon violation of a term or condition, the court may
     enter an adjudication of guilt and proceed as otherwise

                               1

provided. Upon fulfillment of the terms and conditions, the court shall discharge the person and dismiss the proceedings against him. Discharge and dismissal under this section shall be without adjudication of guilt and is a conviction only for the purposes of applying this section in subsequent proceedings.

<u>BACKGROUND</u>

The record shows that on May 3, 2004, a grand jury in the Circuit Court of the City of Hampton indicted White for the possession of cocaine. Code § 18.2-250. On December 21, 2004, she appeared before the circuit court, entered a plea of guilty to the indictment, and requested that she be placed on first-offender status. The court granted her request and entered an order dated December 21, 2004, stating in pertinent part as follows:

> The Court finds pursuant to § 18.2-251 that there are sufficient facts that would justify a finding of guilt, and, without entering a judgment of guilt and with the consent of the defendant, defers further proceedings and places the defendant on probation until . . . December 21, 2005, . . . upon these terms and conditions:
>
> **Good behavior.** The defendant shall be of good behavior.
>
> **Supervised Probation.** The defendant is placed on probation under the supervision of a Probation Officer . . . for one (1) year from the date above. . . .
>
> **Costs.** The defendant shall pay costs of this proceeding. . . .
>
> **Driver's License.** The defendant's driver's license is ordered to be suspended for a period of six (6) months from today.

2

On December 21, 2005, the circuit court held a review hearing.  The Commonwealth reported that White had satisfied "all of her probation requirements" except the payment of court costs in the amount of $900.00.  The court entered an order dated December 21, 2005, stating as follows:  "On the motion of the Court, this matter is continued until June 21, 2006, at 9 o'clock to check the status of payment."

Nothing was said at the review hearing or in the December 21, 2005 order concerning whether White was to continue on probation.  Uncertain about the matter, the probation officer, Mary Shaw, at some undisclosed time, "called over to the clerk's office and spoke with Sherry who advised that the Judge did want [White] to continue on probation for six months, so [Shaw] continued to supervise [White]."  The person named "Sherry" is not otherwise identified in the record and it is not shown how she purportedly came by the information concerning the judge's wishes relating to the continuance of White's probation.

On June 5, 2006, the clerk of the circuit court issued a capias for White's arrest and she was brought before the court on June 21, 2006.  The court granted the Commonwealth's request to "set this [case] over for a . . . revocation hearing to revoke [White's] first offender status."

The revocation hearing was held on August 2, 2006.  At the outset, White's counsel moved to dismiss the possession of

3

cocaine charge against her on the ground she had "complied with all the conditions of her first offender status," including the timely payment of the court costs in March 2006. The Commonwealth then called the probation officer, Mary Shaw, as a witness. She confirmed that White had paid the court costs, but she testified that "[a]lmost immediately" after the review hearing on December 21, 2005, White "started using drugs again." Shaw stated that White admitted she used cocaine on December 31, 2005, and January 29, 2006, and that White tested positive for cocaine on March 3, 2006, and March 13, 2006.

The circuit court denied White's motion to dismiss, found that she had "violated the terms of her first offender status," and convicted her of the possession of cocaine. The court then sentenced White to serve two years in the penitentiary, suspended for a period of three years under the supervision of a probation officer.

Upon White's petition, the Court of Appeals awarded her an appeal. In a published opinion, the court affirmed the judgment of the circuit court. White v. Commonwealth, 51 Va. App. 9, 654 S.E.2d 309 (2007).

The Court of Appeals held that while the circuit court's December 21, 2004 order granting White first-offender status "explicitly ended her supervised probation on December 21, 2005," and that "the trial court could not find that she

4

violated the terms of her supervised probation," id. at 14, 654 S.E.2d at 311, it did not end the good behavior requirement. These were "separate requirements of the December 2004 order," the court stated, and "[a]s such, . . . the [circuit] court could find that [White] violated the continuing requirement that she be of good behavior when she ingested the illegal drugs." Id.

The Court of Appeals supported its holding of the continuing nature of the good behavior requirement with a comparison of the first-offender status and the situation involving the suspension of a criminal sentence. In this comparison, the court cited our decision in Coffey v. Commonwealth, 209 Va. 760, 762-63, 167 S.E.2d 343, 345 (1969), which, in turn, quoted Marshall v. Commonwealth, 202 Va. 217, 219-20, 116 S.E.2d 270, 273 (1960). In Marshall, we said that while the trial court's order suspending a sentence did "not in terms include a condition of good behavior, that condition is implicit in every such suspension." Id. at 219, 116 S.E.2d at 773.

The Court of Appeals noted that the first-offender status differs from a suspended sentence situation because in the first-offender status "the defendant is not yet convicted." White, 51 Va. App. at 15, 654 S.E.2d at 311-12. Even so, the court said, "the principles expressed in

5

Marshall and confirmed in Coffey apply equally to first offender status," with the result that "the requirement that a defendant be of good behavior remains until the first offender case is dismissed." Id. at 15-16, 654 S.E.2d at 312.

In further support of its holding of the continuing nature of the good behavior requirement, the Court of Appeals stated that "the December 2004 order [granting White first-offender status] explicitly stated that [White] 'shall be of good behavior'" but "did not place an expiration date on this condition, as it did on the supervised probation provision and on the suspension of [White's] driver's license." Id. at 16, 654 S.E.2d at 312. Therefore, the court concluded, when the December 2005 order continued "'this matter'" for payment of costs "without releasing [White] from her remaining responsibilities, the December 2005 order also continued the requirement that [White] be of good behavior." Id.

## ANALYSIS

In an appropriate case, we would agree with the Court of Appeals that the condition of good behavior that is implicit in a suspended sentence situation like that in Marshall should also be implicit in the first-offender status. However, this is not an appropriate case. Unlike Marshall, when the trial court's

6

order suspending a sentence did not in terms include a condition of good behavior, the circuit court's December 21, 2004 order granting White first-offender status contained in explicit terms a condition of good behavior and made that condition one of the terms of probation. We will thus decide this case on the basis of the provisions of that order, not on the basis that an implied condition of good behavior existed.

We do not agree with the Court of Appeals that the condition of good behavior in this case continued after December 21, 2005. The circuit court's order of December 21, 2004, granting White first-offender status, stated that the court placed her "on probation until . . . December 21, 2005." While the condition that she "shall be of good behavior" did not have a termination date, as did the supervised probation and driver's license provisions, we have held previously that "when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court." Fredericksburg Constr. Co. v. J. W. Wyne Excavating, Inc., 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000).

In a statement from the bench on the same day that the December 21, 2004 order was entered, the court stated as follows:

> All right. Ms. White is then afforded first offender status. The case will reappear on the docket of this Court December 21st of 2005, at 9:00 a.m.

7

> Between that time and now, <u>Ms. White</u> is on first offender status, <u>will be of good behavior</u>, supervised by adult probation and parole. . . . The right to apply for a driver's license is suspended six months. Costs are due by the end of November. [Emphasis added.]

Giving due deference to the circuit court's interpretation of its December 21, 2004 order, it is clear that the order extended the good behavior condition only to December 21, 2005.

We also disagree with the Court of Appeals that the circuit court's December 21, 2005 order continued the good behavior condition beyond that date. The order stated that the continuance of "this matter" to June 21, 2006, was for one and only one purpose, <u>viz.</u>, "to check the status of payment" of court costs. The order does not mention any of the conditions of probation other than the payment of court costs. To read the December 21, 2005 order as continuing the condition of good behavior would require the addition of language that the order does not presently contain, and we will not engage in that sort of interpolation.

This brings us to the circuit court's final order. In that order, the court stated that it was revoking White's first-offender status because she had "violated the terms of [her] probation" without specifying the conditions she had violated, and no statement of the court supplies that information. At that point, the only two conditions that might possibly have

8

remained at issue were supervised probation and good behavior. The circuit could not have known at that time, of course, that the Court of Appeals would hold that "the 2004 order explicitly ended [White's] supervised probation on December 21, 2005," and that "the trial court could not find that [White] violated the terms of her supervised probation." White, 51 Va. App. at 14, 654 S.E.2d at 311.

The Commonwealth has not assigned cross-error to these holdings of the Court of Appeals and they have become the law of the case. See Little v. Cooke, 274 Va. 697, 722, 652 S.E.2d 129, 143-44 (2007). Thus any holding of the circuit court that White violated the supervised probation condition would have had no legal basis.

With respect to the good behavior condition, the Commonwealth represented during oral argument before this Court that it was simply relying on the fact that subsequent to the time White's authorized supervision expressly ended, the Commonwealth "became aware of the violations of the implied condition for good behavior which existed." However, as we held earlier in this opinion, it is inappropriate to imply a condition of good behavior when, like in this case, the order granting first-offender status contains its own explicit condition of good behavior.

9

The Commonwealth also indicated during oral argument that it was relying upon a "de facto" extension of probation, apparently stemming from the testimony of Mary Shaw, White's probation officer, that someone named Sherry in the clerk's office advised her that "the Judge did want [White] to continue on probation for six months, so [Shaw] continued to supervise [White]." However, "de facto" can mean something "having effect even though not formally or legally recognized." Black's Law Dictionary 448 (8th ed. 2004). A de facto extension, therefore, would be an unworkable concept in probation law and of doubtful efficacy. As we pointed out earlier in this opinion, the circuit court's December 21, 2004 order granting White first-offender status explicitly stated that she was placed "on probation until . . . December 21, 2005." Only a written order entered by the circuit court, not some "de facto" extension, would have sufficed to extend White's probation beyond that date, but none was forthcoming.

CONCLUSION

For the reasons assigned, we will reverse the judgment of the Court of Appeals, vacate the judgment of the circuit court, and enter final judgment dismissing the May 3, 2004 indictment against White for possession of cocaine.

Reversed and final judgment.

10